**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ROBIN S.**, <br><br> *Plaintiff,* <br><br> v. <br><br> **COMMISSIONER OF SOCIAL SECURITY**, <br><br> *Defendant*. | No. 24-cv-06904 <br><br> **OPINION** |

**APPEARANCES**:

**Taylor Vick**
JACOBS, SCHWALBE & PETRUZZELLI, PC
Woodcrest Pavilion
10 Melrose Avenue, Suite 340
Cherry Hill, NJ 08033

    *On behalf of Plaintiff*.

**Anne Von Scheven**
**Margaret Reed**
UNITED STATES ATTORNEY
SOCIAL SECURITY ADMINISTRATION
OFFICE OF PROGRAM LITIGATION
6401 Security Boulevard
Baltimore, MD 21235

    *On behalf of Defendant*.

**O'HEARN, District Judge.**

This matter comes before the Court on Plaintiff Robin S.'s[1] ("Plaintiff") appeal from a denial of Social Security disability benefits and supplemental security income by the Acting Commissioner of Social Security ("Commissioner"). (ECF No. 4). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, the Court **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND

The Court recites herein only those facts necessary for its determination on this appeal.

### A. Administrative History

Plaintiff filed an application for a period of disability and Disability Insurance Benefits ("DIB") on April 16, 2021 alleging an onset date of disability beginning July 1, 2021, due to post traumatic stress disorder ("PTSD"), adjustment disorder, chronic back injury, and being legally blind in the left eye. (AR 67). Plaintiff's claims were denied initially on November 19, 2021 and upon reconsideration on January 8, 2022. (AR 80–84, 87–90).

On March 4, 2022, Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (AR 133–134). A hearing was held on August 14, 2023. (AR 32–65). Plaintiff, who was represented by counsel, testified, as did a Vocational Expert ("VE"). (*Id.*). The ALJ issued a Decision Denial on August 25, 2023. (AR 15–31). Plaintiff appealed the decision to the Appeals Council, which affirmed on May 15, 2024. (AR 1–7). Plaintiff timely filed an appeal on June 10, 2024, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). (ECF No. 1).

---

[1] Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

### B. Plaintiff's Background and Testimony

Plaintiff filed an application for DIB on April 16, 2021, alleging disability beginning July 1, 2021. (AR 67). He was 51 years old at the time of his alleged onset date and holds a master's degree in education. (AR 36, 197). At the August 14, 2023 administrative hearing, Plaintiff testified that he previously worked as a vice principal and substitute teacher, a supervisor with the U.S. Census Bureau, an ad rater for Google, and in various analyst roles with the federal government and private sector. (AR 37–43). He also worked part-time at a mini-golf course on the Ocean City boardwalk. (AR 38–39).

Plaintiff testified that he experiences chronic low back pain, panic attacks, and PTSD, which he asserts prevent him from working. (AR 45–49). He described severe, daily pain and mobility issues, stating that he cannot sit or stand for long periods, drops to his knees during flare-ups, and requires frequent rest breaks. (AR 45–47). He also reported difficulty concentrating due to medication side effects and frequent panic attacks lasting up to two hours. (AR 48–49). He testified that he could not perform daily activities consistently and avoided driving at night due to visual impairment in his left eye. (AR 46–47, 49–50, 53). Despite these claimed limitations, the record also reflects that Plaintiff is able to complete household tasks such as cleaning and walking his dog, and he also ran for a seat on the local school board, although he was not elected. (AR 227–229, 635).

### C. Medical History

Plaintiff has been examined by numerous medical professionals throughout the pendency of his disability claim. The Court will briefly summarize the relevant medical evidence for purposes of this appeal. This recitation is not comprehensive.

Plaintiff has a history of lumbar spine issues stemming from a car accident and prior surgery. (AR 284, 486). Imaging showed disc bulges, facet arthropathy, and degenerative changes. (AR 441–42). He received regular chiropractic treatment, lumbar injections, and radiofrequency ablation for pain management. (AR 288, 368–370, 421–424). His gabapentin dosage was gradually increased to 1500 mg to manage chronic pain. (AR 986, 1105–1106, 1355–1357). However, treatment notes from his primary care physician, Dr. Luigi Baretto, indicated that Plaintiff's chronic back pain was "well-controlled" with medication, and his physical examinations were often unremarkable. (AR 794).

Plaintiff was also treated for mental health conditions, including PTSD, acute stress disorder, and anxiety, following a traumatic event involving his son's overdose. (AR 648, 1105). He was prescribed lexapro and alprazolam and treated by his primary care physician, Dr. Baretto. (AR 1087). In February 2022, Dr. Baretto reported that Plaintiff's stress and anxiety rendered him unable to work. (*Id.*). Nevertheless, treatment notes throughout 2021 and 2022 described Plaintiff's mood as stable or improving, with controlled and well-managed symptoms. (AR 538–540, 794, 1105, 1317).

Plaintiff also has documented vision loss in his left eye following PRK surgery, with complaints of glare and depth perception issues. (AR 53, 564–566). However, objective testing showed that his best corrected visual acuity was 20/30 in the left eye and 20/25 in the right. (AR 565). His visual fields showed some superior arcuate decrease on the left, but agency reviewers found no evidence that these impairments caused more than minimal work-related limitations and Plaintiff's ocular health has been described as "unremarkable" and non-severe. (AR 69, 566).

Plaintiff experienced recurrent kidney stones with several documented episodes in 2022 and 2023, but there is no indication that they resulted in sustained functional limitations. (AR 748–

752, 759–773). Similarly, he underwent testing in 2019–2020 for cardiac symptoms, but subsequent treatment notes do not reflect any cardiovascular condition affecting his work abilities. (AR 293–298).

Two medical opinions were submitted regarding Plaintiff's functional limitations. In July 2023, Dr. Baretto opined that Plaintiff could sit, stand, and walk for less than two hours in an eight-hour day, would need unscheduled breaks, would be absent from work approximately four times per month, and would frequently experience symptoms that interfere with attention and concentration. (AR 697–700). Separately, state agency psychological consultant Dr. Luis Umpierre opined in December 2021 that Plaintiff had moderate limitations in maintaining attention and concentration, responding to workplace changes, and completing a normal workday without interruptions from psychologically based symptoms. (AR 76–77).

### D. Testimony of Vocational Expert

Susan Gaudet, VE, testified during the August 14, 2023 hearing. (AR 54). The VE classified Plaintiff's prior work as an ad rater as a telegraph service rater pursuant to the Dictionary of Occupational Titles ("DOT"). (AR 55). The VE identified this position as unskilled and sedentary, with an SVP of 2 and a reasoning level of 2. (AR 55, 58).

The ALJ posed several hypotheticals to the VE during the hearing. (AR 58–62). The first hypothetical assumed an individual with Plaintiff's vocational profile and Residual Functional Capacity ("RFC") with the following limitations:

> Avoiding all exposure to hazards such as unprotected heights and moving mechanical parts and uneven terrain. No driving for a profession. The hypothetical individual retains the ability to carry out simple, routine tasks on a continuous basis with simple instructions and simple work-related decisions. No assembly line or production rate pace work. No work in tandem. Occasional interaction with coworkers and supervisors. No constant interaction with the public in a customer service setting. The hypothetical individual is able to tolerate occasional changes in the work setting and work processes.

(AR 58). The question posed was whether such an individual could perform Plaintiff's prior line of work, and the VE testified that such an individual could perform the work of a telegraph service rater both as actually and generally performed. (*Id.*). The VE also testified that such an individual would be able to perform work as a store laborer, hand packager, and package sorter. (AR 59).

The second hypothetical assumed an individual with Plaintiff's vocational profile but with an RFC to perform light work and, in addition to the limitations described in the first hypothetical: "Never climbing ladders, ropes, or scaffolds, or crawling. Occasionally climbing ramps and stairs, balancing, stooping, kneeling, and crouching. No constant operational foot controls bilaterally." (*Id.*). The VE testified that Plaintiff's past work as a telegraph service rater, as described and as performed, would remain a viable option, as would package sorter, mailroom clerk, and office helper. (AR 59–60).

The third hypothetical assumed an individual with Plaintiff's vocational profile but with an RFC to perform sedentary work and the limitations described in the first two hypotheticals. The VE again testified that Plaintiff's past work as a telegraph service rater, as described and as performed, would remain an option. (AR 60). The VE also testified that, generally, an individual could be off-task up to 10% of the workday, and that being absent eight or more times per year would be work preclusive. (*Id.*). The VE stated that her testimony was consistent with the DOT and its companion, the Selected Characteristics of Occupations, except in areas where she relied on her own education and experience. (*Id.*).

On cross-examination, the VE acknowledged that the telegraph service rater position would typically require more than occasional interaction with coworkers and supervisors during the probationary period. (AR 61). She further agreed that any jobs requiring detailed instructions would be precluded by the RFC's limitation to only simple instructions. (AR 61–62).

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citation omitted). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citations omitted); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations, quotation marks, and alteration omitted); *see also Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009).

The substantial evidence standard is a deferential standard, and an ALJ's decision cannot be set aside merely because a Court "acting *de novo* might have reached a different conclusion." *Hunter Douglas, Inc. v. N.L.R.B.*, 804 F.2d 808, 812 (3d Cir. 1986) (citations omitted); *see e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citation omitted).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). "The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham." *Id*. The Court has a duty to "'review the evidence in its totality,' and 'take into account whatever in the record fairly detracts from its weight.'" *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018) (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997)). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Hum. Servs.,* 722 F.2d 1150, 1153 (3d Cir. 1983) (citation omitted). Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citation omitted).

### B. Sequential Evaluation Process

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)–(v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.

> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (internal citations and footnote omitted) (alterations in original).

## III. ALJ DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of July 1, 2021. (AR 20).

At step two, the ALJ determined that Plaintiff had the following severe impairments: depressive disorder, anxiety disorder, PTSD, lumbar degenerative disc disease, and chronic pain syndrome. (*Id.*). The ALJ considered these impairments to significantly limit Plaintiff's ability to perform basic work activities. (*Id.*). As for Plaintiff's visual impairment, the ALJ found that this condition did not impose more than minimal work-related limitations and was thus non-severe. (AR 21).

At step three, the ALJ found that none of Plaintiff's impairments, individually or in combination, met or medically equaled the severity of any listing. (*Id.*). Specifically, the ALJ found moderate limitations in all four broad functional areas: understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. (AR 21–22).

Before making the step four determination, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to the following limitations:

> [C]an never climb ladders, ropes, or scaffolds or crawl; occasionally climb ramps, stairs, balance, stoop, kneel and crouch. He can perform no constant operation of foot controls bilaterally. Avoids all exposure to hazards such as unprotected heights, moving mechanical parts, uneven terrain. Can perform no driving for a profession. He retains the ability to carry out simple routine tasks on a continuous basis with simple instructions and simple work-related decisions. He cannot perform assembly line or production rate pace work, and no work in tandem. He can have occasional interaction with co-workers and supervisors, and no constant interaction with the public in a customer service setting. He is able to tolerate occasional changes in the work setting and work processes.

(AR 23). In formulating this RFC, the ALJ evaluated the opinion evidence and found the assessments of both Dr. Baretto and Dr. Umpierre to be only "somewhat persuasive." (AR 26). Specifically, the ALJ found that Dr. Baretto's July 2023 opinion—which assessed significant limitations in sitting, standing, walking, and attention, and predicted Plaintiff would miss four days of work per month—was not consistent with the medical evidence of limitations assessed. (AR 26, 697–700). The ALJ emphasized that those records frequently described Plaintiff's back pain and mental health symptoms as "well controlled" and "unremarkable" and did not document clinical findings that would substantiate such severe functional restrictions. (AR 24–26).

The ALJ likewise considered the December 2021 opinion of Dr. Umpierre, a state agency psychological consultant, who opined that Plaintiff had moderate limitations in maintaining attention and concentration, completing a normal workday without psychological interruptions, and responding appropriately to changes in the work setting. (AR 75–78). While the ALJ found this opinion generally consistent with the record and the mental limitations ultimately reflected in the RFC, she noted it was only "somewhat persuasive" because the ALJ concluded greater and additional limitations were warranted. (AR 26). As a result, the ALJ incorporated additional

10

limitations on interpersonal interaction and complexity of tasks supported by the record, but did not adopt the more restrictive limitations proposed by either physician.

At step four, the ALJ considered Plaintiff's RFC along with the physical and mental demands of a telegraph service rater and found that Plaintiff was able to perform the job as generally performed. (AR 27). Accordingly, the ALJ found that Plaintiff could return to his past relevant work and was therefore not disabled within the meaning of the Social Security Act for the relevant time period. (*Id.*).

## IV. **DISCUSSION**

In his appeal, Plaintiff asserts three alleged errors within the ALJ's decision. First, Plaintiff contends that the ALJ failed to explain her finding that Plaintiff's visual deficit, kidney stones, and acute stress disorder were non-severe. (Pl.'s Br., ECF No. 5 at 21–23). Second, Plaintiff argues that the ALJ failed to properly evaluate the medical opinions of Dr. Umpierre and Dr. Baretto. (*Id.* at 26–31). Lastly, Plaintiff argues the ALJ erred in finding that Plaintiff could perform his past relevant work because he is restricted to jobs with simple instructions that involve occasional contact with coworkers and supervisors. (*Id.* at 32–35). The Court finds Plaintiff's arguments unpersuasive and, for the reasons that follow, affirms the decision of the ALJ.

### A. The ALJ's Decision That Plaintiff's Kidney Issues, Vision Impairment, and Acute Anxiety Were Not Severe Impairments Is Supported by Substantial Evidence

Plaintiff contends that the ALJ erred by not finding his visual impairment, kidney stones, and acute stress disorder to be severe impairments at step two. (Pl.'s Br., ECF No. 5 at 21–23). In the alternative, he argues that even if those impairments were properly deemed non-severe, the ALJ failed to account for them when formulating his RFC. (*Id.*). The Court is not persuaded that remand is warranted on either ground.

An impairment is considered "severe" at step two if it "significantly limit[s an individual's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The Third Circuit has described step two as a "*de minimis* screening device" intended to weed out groundless claims. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). Accordingly, an ALJ's failure to designate a condition as "severe" does not require remand so long as the ALJ continues through the remaining steps of the sequential analysis and considers the condition when formulating the RFC. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)).

Here, the ALJ found Plaintiff's degenerative disc disease, chronic pain, PTSD, depression, and anxiety to be severe impairments, and continued through the full five-step analysis. (AR 20). Thus, the step two threshold was satisfied. The remaining question is whether the ALJ erred by not accounting for Plaintiff's vision impairment, kidney stones, and acute stress disorder in the formulating the RFC. The Court concludes that the ALJ either reasonably incorporated these impairments or appropriately declined to credit them, based on substantial evidence.

First, the ALJ did not err in finding that Plaintiff's visual impairment was non-severe. The record reflects that Plaintiff had a history of PRK surgery and mild anisometropia but retained uncorrected visual acuity of 20/25 in the right eye and 20/100 in the left. (AR 565). His best corrected visual acuity was 20/25 in the right eye and 20/30 in the left. (*Id.*). The examining optometrist described his ocular health as "unremarkable." (AR 566). Plaintiff testified that his vision issue primarily affected his ability to drive at night. (AR 53). The ALJ expressly incorporated a restriction against driving in the RFC, (AR 23), which reasonably accommodates

this limitation. Because Plaintiff has not identified any other functional limitation attributable to his vision that was omitted from the RFC, Plaintiff's argument lacks merit.

Second, the record does not support Plaintiff's assertion that his kidney stones caused work-related limitations such that it would impact the RFC. The record reflects that Plaintiff experienced several isolated episodes of flank pain between May 2022 and May 2023, attributed to small kidney stones. (AR 743–752, 759–773). These episodes resolved without surgical intervention or hospitalization, and Plaintiff reported being asymptomatic between visits. (*Id.*). There is no indication that the condition persisted at a severity or frequency that would satisfy the twelve-month duration requirement, nor that it caused more than a minimal impact on Plaintiff's ability to perform work activity. *See* 20 C.F.R. §§ 404.1509, 404.1522. While Plaintiff now argues that the ALJ should have addressed this condition explicitly, the record does not support a finding of severity, and thus any failure to do so is harmless.

Finally, the ALJ's consideration of Plaintiff's acute stress disorder is supported by the record. The record indicates that Plaintiff experienced acute stress symptoms following his son's medical emergency in early 2021. (AR 538–47). However, the record also reflects that his symptoms were later diagnosed and treated as PTSD and anxiety—both of which the ALJ found severe and accounted for through appropriate mental limitations in the RFC. (AR 20, 24–25, 548–551). Specifically, the ALJ limited Plaintiff to simple, routine tasks, no fast-paced work, only occasional interaction with coworkers and supervisors, and no public-facing work. (AR 23). These limitations address the very symptoms Plaintiff attributes to acute stress, and Plaintiff fails to point to any evidence in the record to conclude that this diagnosis imposed additional functional restrictions beyond those already incorporated.

13

In short, the ALJ properly found that these impairments were either non-severe or already sufficiently reflected in the RFC. The ALJ's findings are supported by substantial evidence and will not be disturbed. Further, Plaintiff has not demonstrated that the outcome would have changed had the ALJ found otherwise.

### B. The ALJ Provided a Sufficient and Supported Explanation for Discounting the Opinions of Drs. Baretto and Umpierre

Plaintiff contends that the ALJ failed to properly evaluate the medical opinions of Drs. Baretto and Umpierre, arguing that the ALJ's explanation for finding their opinions only "somewhat persuasive" was cursory and inadequate, particularly in light of their opined limitations concerning time off-task and absenteeism. (Pl.'s Br., ECF No. 5 at 26–31). Plaintiff contends that these alleged deficiencies were not harmless because the ALJ's RFC did not adequately reflect those limitations. The Court disagrees.

An ALJ is not required to adopt a medical opinion in full, even when that opinion is deemed persuasive. Rather, the ALJ must evaluate the persuasiveness of medical opinions in accordance with the factors set forth in 20 C.F.R. § 404.1520c, giving particular consideration to supportability and consistency. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citations omitted). The Third Circuit has made clear that it is the ALJ—not treating or examining physicians or State agency consultants—who must make the ultimate findings on disability and RFC. *Id*. In reaching those findings, the ALJ is entitled to weigh all evidence and is not bound to accept any medical expert's opinion or theory but may instead weigh the evidence and draw reasonable inferences. *See Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) (citation omitted). The ALJ must consider all relevant evidence and must provide some explanation for rejecting probative evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citation omitted). The ALJ also has discretion to resolve conflicts in the evidence and determine the extent to which any opinion should

14

be credited. *See Brown*, 649 F.3d at 196–97 (citations omitted). The ALJ's factual findings need not follow a particular format, so long as the decision includes sufficient development of the record and explanation of findings to permit meaningful judicial review. *See Jones*, 364 F.3d at 505 (citation omitted); *see also Jaclyn G. v. Comm'r of Soc. Sec.*, No. 21-11101, 2022 WL 2116866, at *6 (D.N.J. June 13, 2022) (noting that ALJ decisions are reviewed "as a whole") (citation omitted).

Here, the ALJ found Dr. Baretto's opinion only "somewhat persuasive" because it was "not consistent with the evidence of limitations assessed, and there is no indication of the duration of treatment." (AR 26). While Plaintiff correctly notes that Dr. Baretto treated him from at least 2019 through 2023, the ALJ's failure to specify the duration of treatment does not undermine the substance of her persuasiveness analysis, which relied primarily on inconsistency with the overall record. That inconsistency is well supported by the record. As the ALJ noted, Plaintiff reported that gabapentin helped control his pain, continued jogging and walking on the beach for exercise, and was able to engage in routine activities like caring for his son, household chores, shopping, and even running for local school board office. (AR 24–25). These activities are facially inconsistent with Dr. Baretto's opinion that Plaintiff would require seven rest breaks of over two hours each per day and would be absent four or more days per month. (AR 697–698). Although the ALJ's discussion of Dr. Baretto's opinion was brief, she incorporated supporting analysis in earlier sections of her decision. That suffices. *Jones*, 364 F.3d at 505 (citation omitted); *see also Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024) ("Administrative judges [are required] to explain only the dispositive reasons for their decisions, not everything else that they considered."); *Phillips v. Barnhart*, 91 F. App'x 775, 780 n.7 (3d Cir. 2004).

The ALJ similarly found Dr. Umpierre's opinion "somewhat persuasive," noting that it was "generally consistent with the medical record as a whole." (AR 26). Plaintiff objects that the ALJ failed to address Dr. Umpierre's findings about absenteeism and time-off-task. (Pl.'s Br., ECF No. 5 at 20–21). However, the Court finds that any failure to discuss these findings in detail is harmless. Ultimately, the ALJ's RFC was more restrictive than Dr. Umpierre's assessment, excluding production-rate and tandem work, limiting Plaintiff to simple tasks and decisions, and requiring only occasional interaction with others and occasional workplace changes. (AR 23). These accommodations directly address Dr. Umpierre's findings that Plaintiff was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, to perform at a consistent pace without an unreasonable number and length of rest periods, to respond appropriately to changes in the work setting, and to maintain attention and concentration for extended periods. (AR 76). To the extent Dr. Umpierre's opinion could be read to suggest greater limitations, any such inference does not undermine the ALJ's conclusion because the ALJ need not include every alleged limitation, only those credibly established. *See Rutherford*, 399 F.3d at 555 (citation omitted). As noted above, the ALJ explained that the record, and specifically Plaintiff's activity level, was inconsistent with the number of breaks and absences Dr. Umpierre implicitly suggested, citing Plaintiff's ability to exercise, perform household chores, care for his son, pursue local school board election, and reports of symptom improvement with medication—all of which undercut a finding that Plaintiff would be off task or absent at a disabling level. (AR 24–25).

The ALJ adequately evaluated and explained her findings as to Drs. Baretto and Umpierre. Though her explanations were concise, they are supported by substantial evidence and the

decision, read as a whole, reveals a clear and rational basis for the weight assigned. The Court finds no reversible error in the ALJ's treatment of these opinions.

### C. Plaintiff Has Not Shown That He Lacked Past Relevant Work, and the ALJ Properly Relied on the Vocational Expert's Testimony at Step Four

Plaintiff argues that the ALJ erred at step four in finding that he could perform his past work as a telegraph service rater because, according to Plaintiff, the job's reasoning level, social demands, and work pace conflicted with the ALJ's RFC finding. (Pl.'s Br., ECF No. 5 at 32–35). However, as an initial matter, Plaintiff failed to preserve this argument. At the hearing, Plaintiff's counsel did not object to the VE's testimony that Plaintiff could return to his past work as a telegraph service rater. Nor did counsel raise any conflict between the VE's testimony and the DOT at that time. Plaintiff's challenge now on appeal is therefore waived. As the court explained in *Lisa C. M. v. Kijakazi*, where no objection is raised at the hearing, an ALJ is entitled to rely on a VE's testimony as substantial evidence—even if that testimony arguably conflicts with the DOT. No. 20-14153, 2022 WL 3273953, at *14 (D.N.J. Aug. 11, 2022) (citing *Tonti v. Saul*, No. 20-92, 2021 WL 518178, at *3 (W.D. Pa. Feb. 11, 2021); *Brown v. Comm'r of Soc. Sec.*, No. 19-2110, 2020 WL 1244186, at *5 (E.D. Pa. Mar. 16, 2020); *O'Neill v. Comm'r of Soc. Sec.*, No. 18-0698, 2019 WL 413539, at *9 (D.N.J. Jan. 31, 2019)).

Plaintiff attempts to distinguish *Lisa C. M.* on the ground that the VE here testified on cross-examination that any jobs requiring detailed instructions would be precluded by the RFC. But that mischaracterizes the testimony. The actual exchange was as follows:

> Q: [H]ypothetically, if any of the jobs required any detailed instructions or detailed tasks they'd be outside the hypothetical. And that goes for any of the jobs listed in any of the questions. Is that correct?
>
> A: Correct.

(AR 61–62). This exchange simply confirms that the VE understood the hypothetical RFC as excluding jobs that required detailed instructions. It does not show that the jobs the VE had identified, including telegraph service rater, did in fact require detailed instructions. Moreover, the VE testified that her testimony was consistent with the DOT except where she relied on her education and experience (AR 60). The ALJ was therefore entitled to rely on that testimony without further inquiry.[2]

Even assuming Plaintiff's argument was not waived, it nevertheless fails on the merits. First, Plaintiff asserts that the telegraph service rater job is a reasoning level 2 position requiring the ability to carry out "detailed" instructions, which he contends is inconsistent with the ALJ's RFC limiting him to "simple instructions and simple work-related decisions." (Pl.'s Br., ECF No. 5 at 32–33). However, the Third Circuit and courts in this district have repeatedly held that reasoning level 2 jobs do not inherently conflict with a limitation to simple instructions or simple tasks. *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004); *see also Jones v. Astrue*, 570 F. Supp. 2d 708, 716 (E.D. Pa. 2007) (finding no conflict between simple and routine tasks and the definition of reasoning level 2), *aff'd*, 275 F. App'x 166 (3d Cir. 2008). Accordingly, Plaintiff's argument regarding reasoning level lacks legal support and does not undermine the ALJ's step four finding.

Plaintiff also argues that the telegraph service rater job is inconsistent with the RFC's social interaction limits. But, in addition to not being raised at the hearing, this argument also lacks merit. The ALJ limited Plaintiff to occasional interaction with co-workers and supervisors and no

---

[2] While Plaintiff cites *Ellis v. Berryhill*, No. 17-5093, 2018 WL 6271578 (E.D. Pa. Nov. 30, 2018), that case is distinguishable. In *Ellis*, the plaintiff affirmatively raised the conflict between the VE's testimony and the DOT in post-hearing briefing, preserving the issue for review. Here, Plaintiff raised no objection at the hearing or in a timely post-hearing submission.

constant interaction with the public. According to the DOT, the telegraph service rater position has a "People" code of "8 – Taking Instructions – Helping," which is defined as "Not Significant." This aligns with the RFC's social limitations.[3] *See Torres v. Kijakazi*, 21-18424, 2023 WL 6890851, at *9 (D.N.J. Oct. 19, 2023) (noting this is the "lowest possible level of human interaction that exists in the labor force") (citation omitted); *Anderson v. Comm'r of Soc. Sec.*, 07-1680, 2008 WL 619209, at *9 (D.N.J. Mar. 4, 2008) (finding such a rating was consistent with occasional interaction).

To the extent Plaintiff suggests that interaction requirements during a probationary training period may exceed occasional, courts have rejected this theory. *See e.g., Rebecca L. v. Comm'r of Soc. Sec.*, 617 F. Supp. 3d 256, 273 (D.N.J. 2022) (citations omitted). Here, the VE acknowledged that interaction levels during training may exceed occasional, but this does not create an apparent conflict under SSR 24-3p, which clarifies that the DOT reflects "maximum requirements of occupations as generally performed." The VE confirmed that her testimony was consistent with the DOT, except where she relied on her experience, and Plaintiff did not challenge that assertion. Because the potential for elevated interaction is limited to an initial probationary period and does not conflict with the DOT's characterization of the job as generally performed, no further explanation was required from the ALJ.

---

[3] Plaintiff's argument that a limitation to occasional interaction with supervisors and coworkers is categorically inconsistent with the basic mental demands of unskilled work under SSR 85-15 is unavailing. SSR 85-15 does not bar all unskilled work for individuals limited to occasional interaction with others. Rather, the ruling provides that a "substantial loss" of ability in any basic mental demand "would severely limit the potential occupational base," and that in such cases, VE testimony is especially helpful. *See* SSR 85-15, 1985 WL 56857, at *3–4. Here, the ALJ appropriately solicited VE testimony, and the VE identified specific jobs Plaintiff could perform despite his social limitations. The ALJ was entitled to rely on that testimony. Courts have rejected nearly identical challenges in this context. *Salgado v. Kijakazi*, No. 20-6094, 2021 WL 3630479, at *7 (E.D. Pa. Aug. 16, 2021) (rejecting argument that SSR 85-15 precludes unskilled work where claimant limited to occasional contact with supervisors).

Finally, the Court rejects Plaintiff's argument that the telegraph service rater position involves assembly line or production rate pace work. The DOT description for that occupation does not reference any such pace requirements, and the VE did not testify that the job entailed production quotas or fast-paced work. Absent any evidence to the contrary, the ALJ reasonably concluded that the position was consistent with Plaintiff's RFC.

Accordingly, the ALJ did not err at step four. Plaintiff bore the burden of showing that he could not perform his past relevant work and failed to meet it. The ALJ's reliance on the VE's testimony was proper and supported by substantial evidence.

## CONCLUSION[4]

For the foregoing reasons, the Court **AFFIRMS** the final decision of the Acting Commissioner. An appropriate Order will follow.

*(signature)*
**CHRISTINE P. O'HEARN**
**United States District Judge**

---

[4] Plaintiff also sought a direct award of benefits. While the Court has the ability to direct an award of benefits, it can only do so if (1) the administrative record is fully developed, and (2) substantial evidence on the record indicates that the Plaintiff is disabled and entitled to benefits. *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357–58 (3d Cir. 2008). Here, the request is moot based on the Court's affirmance of the ALJ's decision.